## A91A1370. ROSS v. THE STATE.

(413 SE2d 207)

Judge Arnold Shulman.

The appellant, Ricky Ross, was found guilty of three counts of aggravated child molestation based on an indictment alleging that he had fondled the sexual organs of his then three-and-a-half-year-old daughter causing vaginal tears and scarring and had committed both oral and anal sodomy upon her, all with the intent to arouse and satisfy his sexual desires.

The child was brought to a hospital emergency room by her mother, her grandmother, and the appellant on January 7, 1990, complaining of pain on urination. The examining physician testified that the child was hysterical and had to be restrained in order for the examination to be conducted. He observed that her vaginal opening was enlarged, swollen and inflamed, with resultant tearing and scarring, and that her anal opening was also swollen and inflamed. Based on these observations and on laboratory test results indicating that she had a vaginal infection of a type which is normally sexually transmitted, the physician concluded that the child had been sexually abused.

As a result of the physician's findings, the Director of the Baldwin County Rape Crisis Center was called to the hospital to interview the child. The child was initially reluctant to talk but eventually responded to the director's entreaty that she reveal whether anyone had touched her "in places of your body that you should not be touched," by stating: "Rick, my daddy. But, I can't tell you." Asked to show where her father had touched her, the child first pointed to her vagina and then rolled over onto her stomach and pointed to her rectum.

An investigator from the sheriff's department was summoned to the hospital, and the child repeated these responses in his presence and in the presence of a third witness, who was both a volunteer for the Rape Crisis Center and a police officer. The investigator asked the child on two or three occasions if her father had put anything in her mouth, and each time the child responded by coughing and gagging. Subsequently, as the child was being brought back to the examining room from a bathroom located across the hall, she saw the appellant standing in the hallway and began screaming and crying. Asked to explain this reaction, she responded that she was "scared of Rick" and that he had told her to "be quiet and not to tell anyone."

During the next few days, the child began weekly counseling sessions at the Oconee Child & Adolescent Center. For the first few months, she refused all invitations by her therapist to talk about the events of which she had spoken at the hospital; however, during a group therapy session which took place in April of 1990, she spontaneously approached another girl who was attempting to demonstrate through the use of a pair of anatomically correct male and female

dolls an experience she had undergone, took the dolls away from her, exclaimed, "No, that's not what happened," and proceeded to demonstrate anal and vaginal intercourse through the use of the dolls. During the course of this demonstration, she slapped the female doll and told it to shut up, and she afterwards ventilated anger towards the male doll, which she referred to as "Ricky," by kicking it and throwing it around the room.

1. The appellant contends that the evidence introduced at trial conclusively established that the abuse had taken place at a time when he did not have access to the child and therefore could not possibly have committed it. The child's mother testified that she and the appellant had lived together in the appellant's mother's apartment from September of 1989 until shortly before Christmas of 1989, when she learned that the appellant was seeing another woman and moved out. The child had not lived with her parents while they were living in the appellant's mother's home but had resided with the mother's parents. From the time the mother and father separated until the weekend of January 7, 1990, when the emergency room visit took place, the appellant saw the child on only two occasions, and both those visits took place in the presence of the mother and her parents. Although the appellant unquestionably had the opportunity to commit the offenses during the 24-hour period immediately preceding the emergency room visit, he contends that the testimony of the emergency room physician conclusively negated the possibility that the abuse had occurred during that period.

The emergency room physician's testimony in this regard was in fact somewhat ambiguous and equivocal. He initially testified that the child's injuries did not appear to have been "recent," in that there was no "active bleeding," but appeared to have occurred "within weeks" of his examination. However, he then testified as follows: "Q. You can't say if it had been within, say the past twenty-four hours or within the past week, just that it had been within weeks? A. Right. Q. But, it had not just occurred? A. No." Later, on cross-examination, he appeared to reaffirm his original testimony, stating: "[I]f it's recent, like within twenty-four hours, you can even see the bleeding and active injury. But, this suggested more of a few weeks." However, he thereafter testified as follows: "Q. Okay. Can you give us an idea of what the earliest could have been? Could it have been within twenty-four hours? A. No. Q. Could it have been within forty-eight hours? A. No. I can not tell. Q. Okay. When you say, no, you mean it was not within twenty-four hours, or. . . . A. *I can not tell.* Q. How long would you expect the bleeding to still be present inside the vagina? A. A few hours." (Emphasis supplied.)

This testimony clearly did not preclude a finding by the jury that the abuse had occurred within the 24-hour period immediately before

the child was brought to the hospital, nor, for that matter, did it preclude a finding that it had occurred more than two weeks prior to that, i.e., while the child's mother and the appellant were still living together. (Although the child had not lived with her parents while they were living with the appellant's mother, the evidence did not establish that he had no access to her during that period.) Construed in the light most favorable to the verdict, the evidence as a whole was sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of each of the three offenses of which he was convicted. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The appellant contends that the trial court erred in allowing the investigator from the sheriff's department to testify that while talking with the child at the hospital, he was "impressed" with her ability to express herself. The appellant's counsel objected to this testimony on the ground that it amounted to "vouching" for the child. However, the statement clearly was not an opinion as to the child's credibility but was simply an observation by the witness that he had found the child to be articulate. In any event, this witness had previously offered identical testimony without objection, and the appellant made no motion to strike that testimony. "Whether or not certain testimony was admissible, its admission was not error where substantially the same evidence was introduced without objection." *Massey v. State*, 220 Ga. 883, 891 (4) (142 SE2d 832) (1965).

3. While cross-examining the appellant about his activities on the night before the child was brought to the hospital, the state's attorney asked him if he had gone to his mother's house after leaving his girl friend's house at about 3:30 or 4:00 a.m. The appellant replied: "No. I left (there) and went to my sister's house." The state's attorney thereupon asked him if he had shared this information with the investigator from the sheriff's department, and the appellant responded in the affirmative. The state's attorney then asked him, "Would you be very surprised to find out that he doesn't think you told him that?" The appellant's attorney objected at this point on the ground that this was "a question that is not in evidence." The objection was overruled, and the appellant complains on appeal that the court thereby allowed the state "to put facts not properly in evidence before the jury." However, in his subsequent answer to the question, the appellant conceded that he "probably didn't" relate the information in question to the investigator. Under these circumstances, the state had no reason to recall the investigator to establish this fact, and the appellant could not have been prejudiced by its failure to do so.

*Judgment affirmed. Carley, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 28, 1991 —
RECONSIDERATION DENIED NOVEMBER 21, 1991.

*Shane M. Geeter,* for appellant.
*Joseph H. Briley, District Attorney, Alberto C. Martinez, Jr., Assistant District Attorney,* for appellee.